PETER LUNT & *al. versus* ZACHARIAH B. STEVENS.

In an action brought by two plaintiffs, a writing signed by one of them, not under seal and without consideration, forbidding the further prosecution of the action in his name and purporting to be a discharge of the same, produced by the defendant, will not have that effect, for it is not technically a release, not being under seal, and does not amount to an accord and satisfaction, nothing being paid.

An assignment by one partner to the other of his interest in all the partnership demands, is good in equity, and gives to the assignee the right to use the name of the assignor to enable him to collect for his own use any debts due to them jointly at the time; and the discharge of the assignor, given afterwards without consideration, will not discharge an action brought in the name of both.

The Stat. of 1821, c. 62, (Stat. of limitations) was repealed by the repealing act of 1841, and the exception in the former act of "such accounts as concern the trade of merchandize between merchant and merchant," was entirely omitted in the Rev. Stat. of limitations, c. 148. Therefore, since the Rev. Stat. went into effect, the operation of the statute of limitations, to bar an action on such accounts, was not prevented.

Where the plaintiffs, the defendant and two others had built a vessel jointly, and after the lapse of more than six years from the time any cause of action had accrued, the defendant wrote a letter to a son of one of the plaintiffs, wherein he, after stating the difficulties that he and the two other owners had experienced in their attempts to procure a settlement with the plaintiffs, says, "when the whole can be settled we are ready; then, if I owe your father I will pay every cent that is due;" and no attempts had been made by the plaintiffs to procure a settlement; *it was held,* that the demand was not thereby taken out of the operation of the statute of limitations.

IN 1825, Lunt and Bradley, the plaintiffs, Stevens, the defendant, and Barbour and Baker, undertook to build a vessel together, the plaintiffs taking one-fourth, and each of the others a fourth. The vessel was built, each contributing towards the building, and continued in use for several years, Lunt acting as ship's husband, furnishing the outfits and receiving the earnings. Lunt was a merchant in Portland and Stevens was a blacksmith and farmer in Westbrook. On June 14, 1837, the defendant wrote a letter to a son of Lunt, in which he says that Lunt has had the whole earnings of the vessel, and the others have never received a dollar, and then makes use of this language. " I never knew whether she made

one dollar or five thousand. Mr. Baker and Mr. Barbour are in the dark as well as myself on account of what she earned while we owned her together. If the whole from the beginning to the end can be settled, I am willing and should be glad. I, myself, Baker and Barbour have spent a good many days for to settle, but could not. When the whole can be settled we are ready, then if I owe your father I will pay every cent that is due." This letter was introduced in evidence by the plaintiffs, insisting that a new promise was found in the above extract. The writ was dated June 5, 1843. The pleadings and facts are stated in the opinion of the Court.

*Fessenden, Deblois* and *Fessenden,* argued for the plaintiffs, citing 1 Greenl. 163 ; 3 Greenl. 97 ; 4 Greenl. 41 ; 4 Pick. 110 ; 15 Mass. R. 481 ; 11 Mass. R. 157 ; 8 Mass. R. 466 ; 22 Pick. 291 ; 23 Pick. 302 ; 6 Greenl. 307 ; 8 Pick. 193 ; Comb. 152 ; 2 Salk. 445 ; Dyer, 279 ; 5 Com. Dig. Merchant, A and F 4 ; 4 Bac. Abr. 596 ; Shower, 126 ; 1 Salk. 125 ; 1 Atk. 128 and 196 ; 4 Bro. Ch. 434.

*W. P. Fessenden* argued for the defendant, citing 17 Maine R. 145 ; 2 Pick. 368 ; 4 Greenl. 41 and 413 ; 2 Pick. 368 ; 22 Maine R. 100 ; 21 Maine R. 435 ; 14 Maine R. 302 ; 6 Peters, 151.

The opinion of the Court was by

WHITMAN C. J. — The account, upon which this action is brought, is for goods sold and delivered, and for advances made on account of a quarter part of a vessel, built and owned by the plaintiffs and the defendant, and two other persons. The last item charged was delivered in March, 1829. The defendant pleaded the general issue, and filed a brief statement, setting up in defence the statute of limitations, and a discharge of the demand. The plaintiff replied to the brief statement, setting up the statute of limitation, that the alleged promise had been revived within six years, and that the account was concerning merchandize, between merchant and merchant. The cause went to trial upon these points, without evidence of the correctness of the items of charge ; and a nonsuit is to be

entered if the grounds of defence relied upon are sustained; otherwise the cause is to stand for trial.

The defendant, in the first instance, produced a paper, signed by Bradley, one of the plaintiffs, dated in June, 1843, forbidding the further prosecution of this action in his name; and purporting to be a discharge of the same; and disclaiming any knowledge of there being any thing due from the defendant, "because all accounts between said parties have been of many years standing, and may or may not have been adjusted." This writing is not technically a release, not being under seal; nor can it amount to an accord and satisfaction; for nothing appears to have been paid. Such a writing amounts to but little, if any thing more than evidence tending to show, that nothing was due from the defendant to the plaintiffs. To counteract this effect the plaintiff, Lunt, introduced an assignment in writing, and under seal, executed by the said Bradley, on the seventeenth day of November, 1840, of all his "interest in all or any demands, which may have been due to the said Lunt and myself at the time of the dissolution of the copartnership between the said Lunt and myself, on the thirteenth day of April, 1829." There can be no doubt but that such an assignment must be good in equity; and that it gives Lunt a perfect right to use the name of Bradley, to enable him to collect, to his own use, any debt due to them jointly on the day of the dissolution of the copartnership. The writing, therefore, made by Bradley cannot be regarded as entitled to much if any weight. It can have no effect in discharge of the action.

But the statute must avail the defendant, unless a new promise has been made within six years before the commencement of this suit, or unless the account originated between the plaintiffs and the defendant as merchants, and concerned the trade of merchandizing, and so forms an exception to the operation of the statute of limitations of 1841. Such an exception was contained in the statute of 1821, c. 62; but that statute was repealed by the repealing act of 1841; and the exception was omitted in the revised statute of limitations of that year. And

it has often been held that statutes of limitation have reference to the remedy only, and are subject to modification at the pleasure of the Legislature. The plaintiffs therefore cannot, upon this ground, avoid the statute bar.

As to the new promise relied upon, it is to be found, if at all, in a letter dated in 1837, written by the defendant to the son of the plaintiff, Lunt; and which appears to have been so written in reply to one, which the father had before addressed to the defendant; and by a saving in the revised statute of limitations of 1841, would not be affected by the provisions therein. The defendant in that letter, after stating the difficulties that he and the two other owners had experienced in their attempts to procure a settlement with the plaintiffs, says, "when the whole can be settled we are ready; then, if I owe your father, I will pay every cent that is due."

The modern adjudications agree, that to take a case out of the statute, there must be either an absolute promise to pay, or an acknowledgment of indebtedness, or a conditional promise to pay, with proof of the performance of the condition. The promise, relied upon by the plaintiffs, is supposed to be of the latter description. To ascertain whether such a promise has been made we must look to the meaning of the defendant, as contained in his letter. Does it contain a conditional promise? If it does, what is the nature of it? Is it to pay the debt in question? and has the condition been performed? What did the defendant mean by the words, "when the whole can be settled?" and what by the words, "we are ready." By examining the whole of the letter it will be discerned, that he referred solely to the concern in the vessel. He speaks of the difficulties theretofore encountered by him, and the two other owners, in their attempts to come to a settlement with the plaintiff; and, when speaking of a settlement proposed to be made, he uses the pronoun *we*, showing the whole that he proposed to have settled, was the concern between all the owners.

Till that was done it could not be seen how each one stood in relation to each of the others. The settlement, to which he referred, was that which he complained, that he, and the other

two owners, had been seeking for, in vain, for years. If on such an adjustment it should appear that any balance was due from him to the plaintiffs, he was ready to pay it. No such adjustment has been made; nor can it be made in this action. The defendant may, on the whole, have paid much more than his proportion in building the vessel; in which case, if the plaintiffs had advanced more than their proportion, their claim would be against the other owners for reimbursement, and not against the defendant. Thus it would seem to be clear, that there was no such conditional promise by the defendant, as is supposed by the plaintiffs; and there can be no pretence of the performance of the condition of the promise, which, it may be considered, that he did in fact make.

Besides: it can scarcely be inferred, that he had reference to any other, than an amicable and mutual settlement between those concerned. No one, upon reading his letter, could suppose he had in view an ascertainment of the balance due in an action at law. Such, then, was not the condition to be performed, in order to render the promise absolute. It is not like the case, in which a promisor in a note of hand said, "if it could be proved that he signed the note he would pay it;" nor like the case supposed in *Perley* v. *Little*, of one who says, without saying more, "*if I owe you any thing on the claim presented, I will pay you.*" In the former, proof of the signature could only be made in a suit at law. The promisor, therefore, must have that mode of performing the condition in contemplation. In the latter, the claim was supposed to be presented; and whether any amount was due on it was to be ascertained. No intimation is supposed to have been given as to how that should be done. The inference might well be that it was to be done in a suit at law. If the language were, "if you and I can settle, and I owe you any thing upon such settlement, I will pay you," the condition could only have been performed, so as to render the promise absolute, by a mutual adjustment. So in the case before us, if the parties concerned in the vessel, could come to a mutual adjustment between themselves, and any thing should be found due by the defend-

ant to the plaintiffs, the defendant might be regarded as promising to pay it. There is no reason to suppose that he contemplated having any thing of the kind accomplished by litigation. There is, then, no satisfactory evidence of a promise, such as is relied upon by the plaintiffs; nor of the fulfilment of the condition of that, which was made.

*Plaintiffs nonsuit.*