[Civ. No. 1741.    Second Appellate District.—September 28, 1915.]

## J. A. HILL, Respondent, v. MARYLAND CASUALTY COMPANY (a Corporation), Appellant.

INDEMNITY INSURANCE—POLICY TO PARTNERSHIP—DISSOLUTION—AGREEMENT OF PARTNERS—SECRET RELEASE BY ONE PARTNER—KNOWLEDGE OF INSURER—LIABILITY TO OTHER PARTNER.—A casualty company which has issued to a copartnership, as an employer, a policy of insurance indemnifying it against loss for damages to its servants, is liable to one of the partners, after the dissolution of the partnership, for the amount of a judgment obtained against the partnership for damages for the death of one of its servants, paid by such partner, notwithstanding that after the dissolution of the partnership and prior to the payment of the judgment, the insurance company secretly obtained the surrender and cancellation of the policy from the other partner and compromised its liability thereunder, in consideration of a certain sum, where it is shown that such company prior to the making of such settlement with such partner had notice of the agreement of the partners made upon dissolution, that the policy should be continued in force to protect them from any liability in the action in which the judgment was paid.

ID.—KNOWLEDGE OF DISSOLUTION AGREEMENT—FINDING SUPPORTED BY EVIDENCE.—In this action, it is held that the evidence is sufficient to justify the finding that the defendant had notice of the dissolution agreement between the partners as to the holding of the policy.

ID.—APPEAL—DECISION OF DISTRICT COURT OF APPEAL—WHEN FINAL.—When an appellant ceases to pursue his appeal from one appellate court to a higher, though he might do so, the decision of the court where he sees fit to rest is a final one.

ID.—PARTNERSHIP—POWERS UPON DISSOLUTION.—Upon the dissolution of a partnership each member thereof, in the absence of an agreement to the contrary, has the same right and authority to collect, compound, and release the debts of the firm existing at the time of such dissolution; such members, however, may by agreement restrict such right and commit the liquidation of its affairs, or any part thereof, to one or more members.

ID.—KNOWLEDGE OF DISSOLUTION AGREEMENT BY INSURER—LAW OF THE CASE.—In this action to recover upon a policy of indemnity insurance it is held that the decision on the former appeal of this case, (12 Cal. App. 462), to the effect that if the defendant had notice of the making of the agreement between the partners upon the dissolution of the partnership as to the continuance of the policy in force, its compromise with one of the partners without the knowledge or consent of the other partner, constituted no defense to the

action, is the law of the case, notwithstanding the appellant made no application for a hearing in the supreme court after said decision.

ID.—DEBTOR WITH CONTINGENT LIABILITY—EFFECT OF KNOWLEDGE OF CONTINUANCE.—Where a debtor whose liability to the firm is contingent has notice of an agreement made between the partners that such liability shall not be released or compromised by either without the consent of the other, such debtor in dealing with one partner contrary to the agreement, acquires no rights against the partnership.

ID.—PAYMENT OF JUDGMENT—PROMISSORY NOTES—CONSTRUCTION OF POLICY.—Payment of a judgment against the partnership by the promissory notes of the partner promising to pay the full amount of the judgment in annual installments, is payment within the meaning of the provision in the policy that "no action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue."

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Frank F. Oster, Judge presiding.

The facts are stated in the opinion of the court.

John Murray Marshall, and Roy V. Reppy, for Appellant.

Haas & Dunnigan, for Respondent.

SHAW, J.—Defendant appeals from a judgment entered in favor of plaintiff and an order of court denying its motion for a new trial.

The action was one to recover from defendant upon a policy of employers' liability insurance.

Plaintiff and one Anthon Swensen were partners engaged in the construction of what was known as the Third Street tunnel in the city of Los Angeles. While so engaged, defendant issued to the copartnership a policy of employers' liability insurance, whereby it agreed to indemnify the copartnership against liability for damages sustained by its employees on account of injury received by such employees while engaged in the prosecution of the work, the same to be paid when claim for damages so received was reduced to judgment and the judgment satisfied. On January 21, 1900, while the policy was in full force and effect, one Powley, an

employee of the copartnership, was killed. His heirs instituted suit for damages, obtaining judgment in the trial court, which, on appeal, was affirmed and thereafter satisfied by this plaintiff.

On March 1, 1901, prior to the rendition of the judgment in favor of the Powley heirs, Hill and Swenson dissolved partnership, adjusting all of their partnership liabilities and assets, save and except as to the claim for damages in the Powley suit and the policy of insurance held by them as indemnity for such liability, as to which, as found by the court, "plaintiff and the said Anthon Swenson further agreed that the said policy of insurance executed in favor of said partnership by the defendant herein should not be canceled, sold, or compromised, but that the same should be held and continued as a protection against the liability of the said partners by reason of the said judgment in favor of Edith Z. and William P. Powley, and that said policy of insurance should be deposited with Warren Gillelen in escrow as security for the performance of said agreement to the effect that neither the said J. A. Hill nor the said Anthon Swenson, jointly or severally, should sell, compromise or cancel said policy, but that the same should be held as a protection against the said liability as aforesaid." The court further found that prior to March 1, 1901, both Swensen and Hill notified the defendant of the making of said agreement other than as to that portion thereof relating to the deposit of the policy with Gillelen, and that on and prior to March 1, 1901, defendant had actual knowledge of the making of the same to the effect that said policy should not be by said partners, or either of them, canceled, surrendered, or sold, but should be held as a continuing protection against said liability in favor of the Powley heirs; that about March 3, 1901, Hill and Swensen adjusted and settled all of the partnership liabilities, save and except that in favor of said Powley heirs, and divided all of the partnership assets except said policy of insurance. The court further found that on March 31, 1902, with full and actual knowledge of the agreement so made between plaintiff and Swensen as hereinbefore stated, defendant entered into an agreement with Swensen pursuant to which, for the sum of three thousand three hundred dollars paid by it to Swensen, the latter delivered to said defendant the policy of insurance and at the same time executed and delivered to de-

fendant in this action an instrument in writing purporting to release and discharge defendant from further liability by reason of said policy of insurance, which instrument he signed in the name of Swensen & Hill; all of which was done without the knowledge of plaintiff, who received no part of said money and who did not know that the same had been paid or said policy surrendered or said receipt given until long after the transaction; that long prior to the transaction so had between defendant and Swensen, defendant had full knowledge that the copartnership between Hill and Swensen had been dissolved and its debts and liabilities, other than the claim of the Powley heirs, had been settled and discharged, and that the assets of the copartnership, other than said policy of insurance had been divided between the partners; that said policy of insurance was never deposited with Gillelen in accordance with the agreement so made between Hill and Swensen, but remained in the possession of Swensen until it was delivered by him to the defendant as aforesaid. The court further found that on September 6, 1907, prior to the bringing of this suit, plaintiff paid and satisfied the judgment so obtained by the Powley heirs as aforesaid; and that Swensen died insolvent prior to May 23, 1905.

Defendant insists that, notwithstanding the agreement made between Hill and Swensen, as to the making of which it had full and actual knowledge, it nevertheless had the right to purchase the policy from Swensen and thus compromise and settle with him for any liability due by virtue of the terms of said policy on the death of Powley to the copartnership, without the consent and against the wish of Hill and contrary to the understanding and agreement made between Hill and Swensen; and hence it is contended the findings are insufficient to support the judgment.

This case was before the court on a former appeal prosecuted by plaintiff from an order denying his motion for a new trial, judgment having been rendered against him in favor of defendant in the action. It is reported in 12 Cal. App. 462, [107 Pac. 707]. Reference to the opinion filed therein shows that the court reversed the order from which said appeal was prosecuted for the reason that the court failed to find on a material issue. That issue was whether or not defendant, prior to the making of the settlement with Swensen, had notice of the agreement made between Hill and

Swensen to the effect that the policy of insurance should not be sold, canceled, or compromised, but should be held to protect them from any liability upon the Powley claim. In deciding the case, the court said: "Notice of this agreement was the material issue in the case, and the one upon which it is conceded plaintiff's right to recover depended." A second trial of the case was had upon this theory; the court not only, as we have seen, found that the agreement was made, but found in favor of plaintiff upon the issue as to whether or not defendant had notice of the existence thereof. The issue could be deemed material upon the assumption only that if defendant had notice of the making of the agreement, then it had no right to purchase from Swensen that which it knew he was selling in violation of the agreement so made with Hill. Whether now deemed a correct decision of the point involved is immaterial, since, right or wrong, it must be regarded as a final adjudication of the question; the court in effect holding that if defendant had notice of the making of the agreement between Hill and Swensen, its purchase of the policy and compromise of its liability thereunder in a transaction with Swensen alone, without Hill's knowledge or consent and in violation of the terms of the agreement, constituted no defense to the cause of action. (*Ferry* v. *Hammond*, 59 Cal. 26; *Sharpstein* v. *Friedlander*, 63 Cal. 78; *Phelan* v. *San Francisco*, 20 Cal. 39; *Kent* v. *Williams*, 146 Cal. 3, [79 Pac. 527].)

In reply to this, appellant suggests that the decision cannot be regarded the law of the case for the reason that it was rendered by the court of appeal which, it is claimed, is not a court of last resort in this jurisdiction. Conceding the doctrine that the law of the case applies only to decisions of a court of last resort, we are nevertheless of the opinion that as to the decision on the former appeal, this court was the court of last resort. While appellant, which was respondent in the former appeal, might have applied to the supreme court for a transfer of the case after the rendition of the decision, it did not do so, but rested upon the decision as final. "The rule seems to be that when an appellant ceases to pursue his appeal from one appellate court to a higher, though he might do so, the decision of the court where he sees fit to rest is a final one, within the meaning of the rule invoked by the respondents," (appellant here). (*Silva* v.

*Pickard,* 14 Utah, 245, [47 Pac. 144].)    (See, also, *Henning* v. *Eldridge* 146 Ill. 305, [33 N. E. 754]; *Lackland* v. *Smith,* 75 Mo. 307.)    After the expiration of thirty days, the decision of the question by this court upon the former appeal became final, leaving it without jurisdiction to recall or modify the same.    Thereafter this court was as fully bound by the decision as was the superior court, which, in the subsequent trial conformed to the directions therein contained.    Aside from this, however, and considering the question an open one, we are satisfied with the correctness of our conclusion.    That upon the dissolution of a partnership, each member thereof, in the absence of an agreement to the contrary, has the same right and authority to collect, compound, and release the debts of the firm existing at the time of such dissolution that he had before, is fundamental.    That the members may by agreement restrict such right and commit the liquidation of its affairs, or any part thereof, to one or more of its members, is equally well settled.    (Civ. Code, secs. 2459, 2460; *Hawn* v. *Seventy-six Land & Water Co.,* 74 Cal. 418, [16 Pac. 196].)    And where a debtor, whose liability to the firm is contingent, as in the case at bar, has notice of an agreement made between the partners that such liability shall not be released or compromised by either without the consent of the other, such debtor, in dealing with one partner contrary to the agreement, acquires no rights as against the copartnership.    Section 2431 of the Civil Code, provides: "A partner is not bound by any act of a copartner, in bad faith toward him, though within the scope of the partner's powers, except in favor of persons who have in good faith parted with value in reliance upon such act."    Knowing that Swensen had no authority to execute the release and that his act in so doing was in violation of his solemn agreement made with Hill, defendant cannot be said to have acted in good faith.    The effect of the agreement as to this policy of insurance was to commit to both partners the control and settlement of defendant's liability thereunder.    In volume 22, American & English Encyclopedia of Law, at page 219, it is said: "As to persons having notice of the appointment of a liquidating partner, the other partners have no power to bind the firm."    In 1 Lindley on Partnership, page 325, it is said: "A firm can only be made liable for what is done by one of its members on the supposition that the act in question

was authorized by the other members.  Now, as by law they are held *prima facie* to authorize all acts necessary for carrying on the business of the firm in the usual way, they cannot escape liability for any act of this character unless they can show that the apparent authority to do it did not exist, and could not have been relied upon, because its non-existence was known."  And on page 327 of the same volume it is said: "A person who has notice that the authority of a partner is restricted, cannot hold the firm liable if he chooses to deal with that partner in a matter beyond his authority as restricted."  To the same effect, see 1 Bates on Partnership, secs. 322 and 323; *Paton* v. *Wright*, 15 How. Pr. (N. Y.) 481.  In the case of *Clark* v. *Lauman*, 63 Ill. App. 132, the court, in considering a similar question, said: "It has been repeatedly held, that, as between the partners, they may agree that one only shall have the authority to settle and discharge debts, and a debtor of the firm, with notice of such agreement, would be bound by it."  Hence, such settlement with notice of the rights ·of the other party, is deemed fraudulent and will not be sustained.  The greater includes the less, and since the members of a partnership upon the dissolution thereof may agree that one only of their number shall act as liquidating partner as to all the affairs of the copartnership, it must follow that an agreement committing the control and settlement of a certain specified matter to all the members, is likewise valid, and a debtor who, with knowledge thereof, induces a partner to violate such agreement or who becomes a party to the wrongful act, should not be permitted to profit by such transaction.

Appellant insists that the evidence is not only insufficient to justify the finding that the agreement in question was made, but likewise insufficient to show that defendant had notice of the making thereof.  While an examination of the record discloses some conflict upon these questions, there is little ground for appellant's contention.  The court was clearly justified in concluding · from the evidence presented, not only that the agreement in effect as found was made between Hill and Swensen, but it is likewise ample to sustain the finding that defendant had notice thereof.  It is apparent from the record that after the trial of the Powley case, defendant was anxious to compromise its liability incurred by reason of executing the policy, and deliberately went about

securing a compromise thereof. Its efforts, made through adjusters, continued for a period covering more than a year before it succeeded in obtaining the coveted release from Swensen.

The policy of insurance contained the following provision: "No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue." The judgment in favor of the Powley heirs, having been affirmed on appeal by the supreme court, Hill, on May 5, 1905, gave his promissory notes whereby he promised to pay the full amount of the judgment in annual installments; whereupon the judgment was satisfied and released. A few days thereafter this action was commenced. Appellant insists the suit was prematurely brought for the reason that plaintiff did not comply with the provision of the policy in that the promissory notes so executed and delivered by him and upon which the satisfaction of the judgment was entered, constituted no payment within the meaning of the provision. Its contention is that the transaction wherein the notes were given in payment of the judgment was a mere subterfuge resorted to for the purpose of making it appear that he had complied with the terms of the insurance contract. The notes were, by an order of court, obtained at the request of the guardian of the Powley heirs, compromised for three thousand five hundred dollars, which sum Hill paid. The order was to the effect that the guardian might compromise the *judgment* in behalf of the minors and against Hill for three thousand five hundred dollars. It is clear that the judgment had been compromised and settled long prior to the making of this order, and the reference made in the order to the judgment, rather than to the notes, was clearly an inadvertence. There is nothing in the record which, in our opinion, justifies appellant's claim that the giving of the notes which were accepted in satisfaction of the judgment, was a subterfuge or that the transaction was had other than in the utmost good faith.

The judgment and order are affirmed.

Conrey, P. J., and James, J., concurred.